UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRADLEY R. MARSHALL,<br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF DEFENSE EDUCATION ACTIVITY,<br>*et al.*,<br>*Defendants.* | No. 1:22-cv-00074 (MSN/JFA) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 14). For the reasons stated below, the Court will grant the motion, and the case will be dismissed.

### I.   FACTUAL BACKGROUND

Plaintiff Bradley Marshall was once a practicing attorney in the state of Washington. However, after finding that Plaintiff had committed legal and ethical violations, the Supreme Court of Washington revoked Plaintiff's bar license in 2009. *See generally In re Disciplinary Proceeding Against Marshall*, 217 P.3d 291 (Wash. 2009). Following his disbarment, Plaintiff began representing federal employees in administrative employment proceedings before Administrative Judges ("AJs") with the Equal Employment Opportunity Commission ("EEOC"). Dkt. No. 2 ("Am. Compl.") ¶ 22.

Throughout the course of these EEOC proceedings, Plaintiff has again faced several allegations of misconduct, resulting in multiple sanctions—some issued *sua sponte* and some issued on motions from Department of Defense Education Activity ("DoDEA") attorneys. *See* Dkt. No. 15 at 4–5. Things came to a head in March 2019, when DoDEA attorneys moved to have Plaintiff disqualified from a particular case and to have the sitting AJ recommend to the EEOC's

1

Office of Federal Operations ("OFO") that Plaintiff be banned from representation activities before the EEOC. *Id.* at 5.

After providing Plaintiff with an opportunity respond, AJ Sharon Alexander disqualified Plaintiff from representing the employee in that case and made a recommendation to the OFO that Plaintiff be barred from all representational activities moving forward. *Id.* The OFO, however, declined to adopt AJ Alexander's recommendation, finding that while the case-specific sanctions were warranted, Plaintiff's actions during that case "were not sufficiently disruptive" to merit large-scale permanent disqualification. Dkt. No. 29-1 at 7.[1]

## II. PROCEDURAL HISTORY

Plaintiff filed his original Complaint on January 24, 2022, before filing an Amended Complaint on February 9, 2022. Dkt. No. 1; Am. Compl. Plaintiff named ten defendants, including: the DoDEA (as a federal agency), Am. Compl. ¶ 2; three DoDEA AJs (Sharon Alexander, Kevin McEvoy, Marianna Warmee), *id.* ¶¶ 9–11; three DoDEA supervisory attorneys (Thomas Brady, Edwin Daniels, Maxwell Selz), *id.* ¶¶ 3–5; and three DoDEA attorneys (Jason Myers, Douglas Frison, Holly Botes), *id.* ¶¶ 6–8.

Plaintiff's operative allegations raise three claims. *First*, Plaintiff claims that Defendants deprived him both of equal protection and his rights under 42 U.S.C. § 1981, loosely alleging that, "[a]t the time of the complained of events, Plaintiff had clearly established Constitutional rights . . . to act as a designated representative to dischargeg [*sic*] his duties to represent federal employees

---

[1] This decision from the OFO was issued on May 30, 2023—after the parties' completed briefing and the Court held oral argument. However, while Plaintiff does challenge the now-rejected recommendation that he be banned from future proceedings, neither party suggests that the OFO's decision moots this case. Although AJ Alexander's recommendation lies at the core of Plaintiff's allegations, that is not the only thing being challenged in this case. Plaintiff's Amended Complaint included allegations that challenge other conduct. *See, e.g.*, Am. Compl. ¶ 30. And while the OFO's decision may nullify the impact of some of the challenged conduct, it does not obviate the need to resolve this case. For that reason, this Court finds that—despite the OFO's intervening decision—this case remains justiciable. *See Moore v. Harper*, 600 U.S. ___, ___ (2023) (slip op., at 6–7) (noting that an intervening appellate decision did not moot the case when the plaintiff still had a personal stake in the outcome of the lawsuit).

2

. . . [and] to perform said contracts." *Id.* ¶¶ 32–37. *Second*, Plaintiff claims that the individual Defendants are liable for violating his First Amendment and Fourteenth Amendment rights under *Bivens*, alleging that Defendants "acted in concert and joint action with each other to retaliate against [himself]." *Id.* ¶¶ 38–42. *Third*, Plaintiff claims that the supervisory attorneys are liable under a theory of *respondeat superior*, alleging that those attorneys "were deliberately indifferent and failed to provide training and supervision to [the other Defendants]" and that their indifference led to "discrimination and retaliation" against him. *Id.* ¶¶ 43–48.

On March 31, 2023, Defendants filed their dismissal motion. Dkt. No. 14 (motion); Dkt. No. 15 (memorandum in support). Plaintiff responded on April 21. Dkt. No. 20. Defendants replied on May 3. Dkt. No. 24. And the Court held oral argument on May 12. Dkt. No. 28.

### III. DISCUSSION

Plaintiff's claims fall into four buckets: (1) statutory claims brought against Defendants in their official capacities, (2) constitutional claims brought against Defendants in their official capacities, (3) statutory claims brought against Defendants in their individual capacities, and (4) constitutional claims brought against Defendants in their individual capacities. In their dismissal motion, Defendants argue that, without reaching the merits of any of those claims, the Court must dismiss the entire case because (in a variety of ways) Plaintiff's claims are blocked by various governmental immunities. The Court agrees.

#### A. Claims Against the DoDEA and other Defendants in Their Official Capacities

The claims against the DoDEA and the individual Defendants in their official capacity fail. Generally, claims against government employees in their official capacity are treated as if they were brought against the governmental employer, meaning official-capacity defendants may assert the same legal defenses that would be available to their employer. *Kentucky v. Graham*, 473 U.S.

3

159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)). Thus, if a claim cannot legally be brought against the employing entity, then any claims brought against its employees in their official capacity must also fail.

Broadly speaking, "the United States cannot be sued in their courts without their consent, and, in granting such consent, Congress has an absolute discretion to specify the cases and contingencies in which [the government can be sued]." *Schillinger v. United States*, 155 U.S. 163, 166 (1894). And this immunity is also enjoyed by executive agencies, as subsections of the federal government. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent waiver, sovereign immunity shields federal government and its agencies from suit.") ("*Meyer*"). Thus, the DoDEA (a federal agency) is shielded from suit absent a showing that the federal government waived its immunity from suits such as this one. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[The plaintiff] who sues the United States bears the burden of pointing to an . . . unequivocal waiver of immunity."). And to determine whether a claim against the federal government is permissible, the Court must begin by asking whether the government has explicitly waived its sovereign immunity. *See Meyer*, 510 U.S. at 484. Then, if the Court finds that it has, the Court may move onto the secondary question of whether the source of substantive law upon which Plaintiff's claims rely provides an avenue for relief. *Id.* The Court, however, need not ever address that secondary inquiry here because it finds that—with regard to both Plaintiff's statutory and constitutional claims—the answer to the threshold question is "no."

*First*, the United States has not waived its immunity under § 1981. In relevant part, that statute states that "the rights protected by this section are protected against impairment by

4

nongovernmental discrimination and impairment under color of *State* law." 42 U.S.C. § 1981 (emphasis added). Thus—by its terms—the statute applies only to actions taken "under color of State law." *Id.* As a federal agency, the DoDEA and its employees act under the color of *federal* law, rendering § 1981 inapplicable in this context. In other words, Plaintiff's suit does not fall within the narrow class of cases for which the federal government's sovereign immunity has been abrogated.

Therefore, because there has not been any clear waiver and the applicable law does not provide an avenue for relief, sovereign immunity protects the DoDEA from any § 1981 claims— and by extension, that immunity also protects the individual Defendants insofar as they are being sued in their official capacities. *See Davidson v. Kane*, 337 F. Supp. 922, 925 (E.D. Va. 1972) (holding that claims under statutes like § 1981 are limited to actions committed under the color of state law; actions taken under the color of federal law are "without the benefit of [such statutes]."); *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 263 F. App'x 753 (11th Cir. 2008) (holding that § 1981 and § 1983 only apply to actions taken under the color of state law and affirming the dismissal of plaintiff's federal claims); *see also Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 801–02 (4th Cir. 2019) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied.") (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). As such, the § 1981 claims against the DoDEA and the individual Defendants in their official capacities must be dismissed.

*Second*, Plaintiff's constitutional claims fare no better. While *Bivens* is regarded as an exception to the general immunity enjoyed by the federal government, that exception applies only to suits brought against federal *agents*—not federal *agencies*. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Meyer*, 510 U.S. at 485 (noting that

"direct action against the government was not available" and refusing to extend *Bivens* liability to a federal agency). Therefore, sovereign immunity also protects the DoDEA from Plaintiff's constitutional claims—and (again) by extension, that immunity also protects the individual Defendants insofar as they are being sued in their official capacities. *See Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002) (explaining that a *Bivens* action cannot be brought against a federal agency or federal agents in their official capacities); *Fleurival v. Carolina Det. Facility*, No. 1:21-cv-340, 2022 WL 188135 (E.D. Va. Jan. 19, 2022) (same).[2]

### B. Individual-Capacity Claims

The Court will also dismiss the claims brought against Defendants in their individual capacities.

#### 1. Statutory Claims

First, Plaintiff's claims under § 1981 against the individual Defendants in their individual capacities fail for reasons similar to the deficiencies identified in the official-capacity claims: § 1981 applies only to actions taken by *state* officials under the color of *state* law, not those of *federal* officials taken under the color of *federal* law. *See Osahar*, 263 F. App'x 753. As such, because Defendants are federal agents and acted under the color of federal law, they cannot be sued under § 1981. Those claims will therefore be dismissed.

#### 2. Constitutional Claims

Turning to the constitutional claims brought against Defendants in their individual capacities, the Court starts by noting that a *Bivens* remedy is only available in a narrow set of

---

[2] In his response to Defendants' dismissal motion, Plaintiff argues that the sovereign immunity does not block his claims because he is seeking equitable relief. *See* Dkt. No. 20 at 18–19. However, because that prayer for equitable relief comes only in Plaintiff's briefing (and not in his Amended Complaint), the Court will not accept those belated contentions. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

circumstances. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (noting that expanding the *Bivens* remedy is now a "disfavored" judicial activity).

In *Bivens*, the Supreme Court was faced with the question of whether a plaintiff was entitled to seek damages in a civil action after federal officers violated his Fourth Amendment rights. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). Answering that question in the affirmative, the Court recognized (for the first time) an implied right of action in which "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *See Carlson v. Green*, 446 U.S. 14, 18 (1980). However, with two exceptions,[3] the availability of a *Bivens* remedy has been limited to cases that do not involve extending such liability to "any new context or new category of defendants." *Ziglar*, 582 U.S. at 135.

To determine whether a case merits the extension of *Bivens*, the Supreme Court has developed a two-step inquiry. *Id.* at 139–40. First, courts must ask whether a given case presents a "new *Bivens* context." If the context is not new—*i.e.*, if the case is not "different in [any] meaningful way" from the three cases in which the Court has recognized a *Bivens* remedy—then the remedy continues to be available. *Id.* But if the context is new, then courts must proceed to the second step and evaluate whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 140 (cleaned up). If such "special factors" exist, a *Bivens* action is not available. *Id.*

Plaintiff's constitutional claims arise under the First and Fifth Amendments. However, providing a remedy under either statute would amount to an impermissible expansion of liability. Therefore the Court will dismiss those claims.

---

[3] Those other two cases are: *Davis v. Passman*, 442 U.S. 228 (1979) (extending remedy to a case brought under the Fifth Amendment) and *Carlson v. Green*, 446 U.S. 14 (1980) (extending remedy to a case brought under the Eighth Amendment).

### a. First Amendment

Plaintiff alleges Defendants are violating his First Amendment rights by retaliating against him for his representation of those who have filed EEOC complaints. *See* Am. Compl. ¶ 24. Notably, in *Egbert*, the Supreme Court recently held that "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022). And because "a new context arises when there is a new constitutional right at issue," *id.* (citing *Ziglar*, 582 U.S. at 140), the Court finds that Plaintiff's First Amendment claim presents a new *Bivens* context. *See Egbert*, 142 S. Ct. at 1807 (refusing to extend *Bivens* to First Amendment retaliation claims).

As such, the Court must now determine whether there are special factors that counsel against extending *Bivens* liability to this context. Again, *Egbert* is instructive. In that case, the Supreme Court noted that "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing [social] costs." *Id.* And, "[b]ecause an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on [retaliatory] intent may be less amenable to summary disposition." *Crawford-El v. Britton*, 523 U.S. 574, 584–85 (1998). "Undoubtedly, then, the prospect of personal liability under the First Amendment would lead to new difficulties and expense" as federal employees "faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties." *Id.* at 1807 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). For those reasons, the Court was "convinced" that "Congress is in a better position to decide whether or not the public interest would be served" by imposing a damages action in cases like this one. *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 390 (1983)).

And because this Court sees no reason to conclude otherwise, Plaintiff's First Amendment claims will be dismissed.

8

### b. Fifth Amendment

Under the Fifth Amendment, Plaintiff alleges that Defendants deprived him of equal protection.[4] This claim also fails.

Again, the Court may only impose liability under *Bivens* if the claims before the Court are sufficiently similar to those of *Bivens* or its progeny. *See Bulger v. Hurwitz*, 62 F.4th 127, 137 (4th Cir. 2023) ("The Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*."). Even minor differences are sufficient to prevent extending *Bivens* liability. *See Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019).

This case does not squarely fit into the circumstances of any of the cases where the *Bivens* remedy has been extended—including *Davis*, which involved the same constitutional provision. The easiest way to distinguish the two cases is to look at who is being sued. As the Supreme Court has explained, a case presents a new *Bivens* context when granting relief would impose liability on a "new category of defendants." *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 ("[The Court] ha[s] consistently refused to extend *Bivens* to any new context or new category of defendants."). And while the defendants in *Davis* were part of the Legislative branch, Defendants here are members of the Executive branch. That alone is enough to consider this a new context of liability. *See Lewis v. Mauskopf,* No. 22-cv-0189, 2022 WL 16744929, at *5 (D.D.C. Nov. 7, 2022) (distinguishing plaintiff's claim from *Davis* because plaintiff sought relief from a member of the Judicial branch rather than a member the Legislative branch).

---

[4] Notably, the Complaint speaks of equal protection in Fourteenth Amendment terms. However, because Plaintiff proceeds *pro se*, the Court will construe his claims as being brought under the constitutional analog applicable to the federal Defendants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed."). However, as explained below, those claims will nonetheless be dismissed.

As such, the Court must now determine whether there are special factors that counsel against extending *Bivens* liability to this context. *Ziglar*, 582 U.S. at 140. One such factor is the availability of an alternate avenue to relief. As the Supreme Court has held, "if there is an alternative remedial structure present, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U.S. at 137. "For if Congress has created any alternative, existing process for protecting the injured party's interest, that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (internal quotations omitted). And, here, Plaintiff had several opportunities for recourse. First, AJ Alexander gave Plaintiff adequate notice and an opportunity to be heard before being sanctioned. Dkt. No. 15 at 5. Then, the OFO investigated the circumstances surrounding the sanctions and the recommendation that Plaintiff be banned from appearing in any future matters. If that investigation produced a result that Plaintiff disagreed with, he could have sought appellate review. And if still unsatisfied, Plaintiff would have been able to seek Article III judicial review in the appropriate federal district court under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 702, *et seq*. That remedial scheme weighs heavily against the extension of *Bivens*. *See Wilkie v. Robbins*, 551 U.S. 537, 553 (2007) (declining to extend *Bivens* where plaintiff had an "administrative, and ultimately a judicial, process for vindicating virtually all of his complaints").

Because "even a single sound reason" is enough to refrain from creating a new *Bivens* remedy in the first instance, the Court need not address any other considerations that would lead to the same conclusion. *See Egbert*, 142 S. Ct. at 1803. And because the Court finds that extending *Bivens* liability would be imprudent in this case, Plaintiff's claims under the Fifth Amendment will also be dismissed.

IV.   **CONCLUSION**

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that this case is **DISMISSED**.

**SO ORDERED.**

/s/
Hon. Michael S. Nachmanoff
United States District Judge

June 27, 2023
Alexandria, Virginia